William J. KROSS, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

WESTERN ELECTRIC COMPANY,
INC., Defendant.

No. 80 C 5208.

United States District Court,
N. D. Illinois, E. D.

Feb. 1, 1982.

Irving Friedman, Michael Erp, Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Ltd., Chicago, Ill., for plaintiff.

Gerald Skoning, Charles Jackson, Mark Casciari, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Plaintiff William Kross brought this action on behalf of himself and all others similarly situated against Western Electric Company, Inc., his former employer, alleging that he and members of the class were discharged from their employment at the company's Hawthorne Division in order to prevent the vesting or continued enjoyment of his and their rights under various employee benefit plans, in violation of Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.[1]

Western Electric has substantially reduced the work force at its Hawthorne Division in the past several years. Kross was 53 years old and had 22 years employment with Western Electric at the time of his termination in September, 1975. To qualify for a service pension at Western Electric, an employee had to be either 55 years old with 20 years of service or 50 years old with 25 years of service. Thus, at termination, Kross was two years shy of qualifying for a service pension, although he does qualify for a deferred service pension. Kross alleges that Western Electric terminated him and the other class members to prevent the vesting of their rights under the service pension plan.

Kross further alleges that as an employee he received certain fringe benefits, including coverage by Company health and welfare, dental, disability and life insurance plans, and he argues that Western Electric terminated him and the other class members to avoid the continued payment for this insurance.

Kross seeks an injunction enjoining defendant from using employment and personnel policies that discriminate in violation of the Act. He further seeks reinstatement for himself and the class and damages in an amount equal to back pay and the other fringe benefits to which he and the class would have been entitled had he and they not been unlawfully discharged.

Western Electric has moved for summary judgment on the ground that Kross failed to exhaust the claim procedures under the benefit and pension plans. The motion is granted for the reasons stated herein.

To resolve the question whether exhaustion is required in this case, an examination of the statutory scheme is necessary. By its express terms, Section 510 incorporates the "provisions" of Section 502 of ERISA. Section 502, in turn, authorizes four types of civil actions, three of which are relevant here:[2]

(a) A civil action may be brought

(1) by a participant or beneficiary—

\*       \*       \*       \*       \*       \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

---

1. Section 510 provides in relevant part:
   It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan .... The provisions of section 1132 of this title [ERISA Section 502] shall be applicable in the enforcement of this section.

2. The fourth category is a civil action by a participant or beneficiary for certain specified relief when the administrator of a plan fails or refuses to comply with a request for information.

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [liability for breach of fiduciary duty];

(3) by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief

(i) to redress such violations or

(ii) to enforce any provisions of this subchapter or the terms of the plan.[3]

■ Courts have uniformly held that actions to recover benefits under Section 502(a)(1)(B) require exhaustion of the plan's claim procedures. *E.g., Challenger v. Local Union No. 1 of the International Bridge, Structural & Ornamental Ironworkers*, 619 F.2d 645 (7th Cir. 1980); *Taylor v. Bakery and Confectionary Union*, 455 F.Supp. 816 (E.D.N.C.1978). On the other hand, exhaustion is not required in civil actions for breach of fiduciary duty brought under Section 502(a)(2). *E.g., Lewis v. Merrill Lynch, Pierce, Fenner & Smith*, 431 F.Supp. 271 (E.D.Pa.1977). *See also Waits v. Weller*, 653 F.2d 1288, 1292 (9th Cir. 1981) (recognizing that a number of authorities have concluded that claims for breach of fiduciary duty are nonarbitrable disputes).

This court's research, however, has disclosed no case that has addressed the question whether exhaustion is required prior to bringing suit under Section 502(a)(3).[4]

Section 510 incorporates the provisions of Section 502, but does not specify whether subsection (a)(1) or (a)(3) governs. The courts that have considered the issue, however, have concluded that subsection (a)(3) applies to actions for violation of Section 510. *E.g., McGinnis v. Joyce*, 507 F.Supp. 654, 657 (N.D.Ill.1981); *Bittner v. Sadoff & Rudoy Industries*, 490 F.Supp. 534, 535 (E.D.Wis.1980) ("Suits for redress of violations of 29 U.S.C. § 1140 [Section 510] are authorized by 29 U.S.C. § 1132 [Section 502](a)(3).")

The question before the court, then, is whether Section 510 claims brought under Section 502(a)(3) are subject to arbitration, like Section 502(a)(1)(B) claims for benefits, or are nonarbitrable, like Section 502(a)(2) claims for breach of fiduciary duty.

The reasons why exhaustion is not required in breach of fiduciary duty cases have no application to claims for breach of Section 510. For example, in *Lewis v. Merrill Lynch, Pierce, Fenner & Smith*, 431 F.Supp. 271 (E.D.Pa.1977), the court held that a plaintiff alleging trustees' breach of fiduciary duty under Section 409 need not submit his dispute to arbitration in accordance with the claim procedures of the plan. The court reasoned:

Section 409(a) makes fiduciaries liable for breaches of duty, subjecting them to such equitable or remedial relief as the Court may deem appropriate. The procedural vehicle for enforcing this liability is provided by Section 502(a)(2) which grants a civil action for relief under Section 409 .... Since answering a suit under Section 502(a)(2) is a consequence of liability under Section 409(a), it may be said that an arbitration agreement relieves a fiduciary of liability ...." *Id.* at 276.

---

**3.** Other subsections provide that any money judgment against a plan is enforceable only against the plan as an entity; that the district courts have exclusive jurisdiction of civil actions brought under this subchapter, except for actions under subsection (a)(1)(B) of § 502, for which the state and district courts have concurrent jurisdiction; that the district courts have jurisdiction without respect to the amount in controversy or the citizenship of the parties; and that the court may allow attorney's fees and costs. They also provide for venue and service of process.

**4.** In *Scheider v. U.S. Steel Corp.*, 486 F.Supp. 211 (W.D.Pa.1980), where the court held that exhaustion was required prior to suit under Section 502, the court did not distinguish between actions under Sections 502(a)(1)(B) and 502(a)(3), nor did it indicate whether the action was one for benefits or for a violation of Section 510. In their complaint, the plaintiffs alleged that they were denied benefits to which they were entitled, but their attorney, in opposing a motion for summary judgment, filed an affidavit averring that plaintiffs were wrongfully discharged within one month of eligibility for benefits under a pension plan.

Because under Section 410(a) of ERISA, 29 U.S.C. § 1110(a), a fiduciary cannot properly be relieved of liability, the court concluded that arbitration could not be required. No similar provision precludes this court from requiring a plaintiff alleging a breach of Section 510 to exhaust his administrative remedies.

A claim for breach of Section 510, brought under Section 502(a)(3), is a separate and distinct cause of action from a claim to recover benefits under an employee benefits plan.[5] The cause of action defined in Section 510 is much broader than that. delineated in Section 502(a)(1)(B). Some conduct, prohibited under Section 510, does not fall within the purview of Section 502(a)(1)(B). *See, e.g., McGinnis v. Joyce,* 507 F.Supp. 654 (N.D.Ill.1981). In that case, Count IV of the Amended Complaint alleged that the plaintiff had been physically threatened for prosecuting his suit to enforce his rights under ERISA. Judge Shadur stated:

> Section 502(a)(1) is clearly inapplicable to the facts alleged in Count IV. It is rather Section 502(a)(3) that McGinnis seeks to invoke to 'enforce . . . provisions of this subchapter,' specifically Section 510.

But the conduct challenged in this case is more problematic.

Kross alleges that Western Electric terminated him for two purposes: to avoid paying for his insurance benefits and to prevent his service pension from vesting. The allegation that Western Electric terminated Kross and the other class members to avoid paying further fringe benefits does not state a claim under Section 510. The gist of an action under this section is to prevent retaliation against a plan participant or beneficiary for exercising rights under the plan or to prevent interference with the attainment of any rights to which he or she may become entitled. *Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. 1188, 1198 (E.D.No.1980), *aff'd in part and rev'd in part,* 653 F.2d 1208 (8th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 512, 71 L.Ed.2d 384 (1981). Kross has not alleged any facts constituting retaliation, *cf. Bittner v. Sadoff & Rudoy Industries,* 490 F.Supp. 534 (E.D.Wis.1980) (plaintiff fired after bringing suit against employer to recover benefits), and as he was already a participant in the insurance plans, he was not prevented from attaining rights under the plan.

The allegation that Western Electric terminated Kross to prevent his service pension from vesting, however, arguably comes within the scope of both Section 502(a)(1)(B) and Section 510. *Cf. Scheider v. U.S. Steel Corp.,* 486 F.Supp. 211 (W.D. Pa.1980) (unclear from opinion whether action was for recovery of benefits under Section 502(a)(1)(B) or interference with rights under Section 510). Clearly, terminating an employee to prevent the vesting of his pension is actionable under Section 510. And although Kross has deftly avoided asking for his pension in so many words, he seeks "damages" equal to the benefits he would have received had he not been terminated. In other words, he seeks to recover his pension.

In cases such as this, where a claim brought under Section 510 is substantially similar to a claim to recover benefits, the court concludes that exhaustion of the claims procedures for the benefit plans involved is required.[6] Most of the reasons for requiring exhaustion in ERISA cases brought under Section 502(a)(1)(B) are equally applicable in this case.

---

**5.** *E.g., Bittner v. Sadoff & Rudoy Industries,* 490 F.Supp. 534 (E.D.Wis.1980), where the plaintiff brought suit in state court against his employer and the plan administrator to recover benefits. After the employer fired the plaintiff, allegedly for filing suit, the plaintiff sued his now former employer in federal court under Section 510. *See generally Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 828–30 (7th Cir. 1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), where the Seventh Circuit discusses the differences between suits under Section 502(a)(1)(B) and those under Section 502(a)(3).

**6.** The court expresses no opinion regarding exhaustion in other types of Section 510 claims.

First, Congress insisted on the creation of elaborate claim procedures for every employee benefit plan and vested the plan's trustees with broad managerial and administrative discretion to manage pension plans and to resolve benefit claims. *See* 29 U.S.C. §§ 1101–14 and 29 C.F.R. § 2560.503–1. If the plaintiff had the choice of suing in federal court or following the claim procedures of the plan, he could sweep away the detailed statutory scheme for internal administrative resolution of claims. Surely Congress could not have intended this. So if the plaintiff's Section 510 claim fits into the claim procedures established under the plan, the plaintiff should have no choice but to exhaust those claim procedures.

Here defendant has submitted the affidavits of the Department Chief, Benefit Service, at Western Electric Company's Hawthorne Works, to whom Kross would have originally submitted his claim; the Chicago Area Regional Benefit Manager and Secretary to four Area Benefit Committees including the Hawthorne Area Benefit Committee (which is the committee relevant to plaintiff's claim); and the Secretary of the Employees' Benefit Committee (who would have reviewed any denial of the plaintiff's claim). Each of the affiants states that a claim for unfair interference with attainment of a pension benefit would have been treated and processed as a claim under the procedures established by the Plan, but none of the affiants could predict the outcome of such a claim. It is possible that at some point in the processing of the claim, the claim could have been rejected as being outside the authority of the Committee or the Secretary, or it could have been considered on the merits and either accepted or rejected. Kross at least should have attempted to exhaust the claim procedure.[7]

The exhaustion requirement also ensures that benefit trustees, who are experts in the administration of benefit plans, have the first opportunity to resolve often complex benefit disputes. In *Challenger v. Local Union No. 1 of the International Bridge, Structural & Ornamental Ironworkers*, 619 F.2d 645, 649 (7th Cir. 1980), the Seventh Circuit noted that "Congress intended fund trustees to have primary responsibility for claim processing."

The trustees' conceded expertise in the administration of benefit plans, however, has little or no bearing on the crucial issue in this case, whether Western Electric discharged the plaintiff to prevent his rights from vesting under the pension plan. But the persons charged with the administration of the claim procedure have expertise in the Company itself and this would be a great benefit to the trier of fact of this issue.

This court, for example, knows through other litigation in this District and from general business knowledge that the job force at Western Electric's Hawthorne Works has been substantially reduced during the past several years. The plan administrators presumably have firsthand knowledge of these events, the reasons for, and the methods of accomplishing, this reduction, and the financial condition of the plan and of the Company, all of which would be directly relevant on the questions of the motive and intent of the defendant's alleged discharge of the plaintiff. All of this information is known by or easily accessible to the administrators of the claims procedures.

Certainly employment discharge cases are regularly resolved through collective bargaining agreement administrative procedures which frequently include arbitration. Courts have no special expertise in employment discharge cases which would prevent

---

7. This is what is required of all persons suing for breach of the collective bargaining agreement under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), and civil actions under § 502 of ERISA "are to be regarded as arising under the laws of the United States in similar fashion to those brought under Section 301 of the Labor-Management Relations Act of 1947." Joint Explanatory Statement of the Committee of Conference, H.R. Conf.Rep.No.93–1280, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code & Ad.News 4639 at 5107. This reference to Section 301 supports the conclusion that claimants are required to exhaust their administrative remedies under ERISA plans.

us from compelling an ERISA claimant to pursue his administrative remedy.

Next, the internal claim procedures are designed "to reduce frivolous claims, promote the consistent treatment of claims, and create a nonadversarial method of claims settlement." *Taylor v. Bakery and Confectionary Union, supra,* 455 F.Supp. at 819. The doctrine of exhaustion promotes these goals and they are as important to Section 510 claims as they are to claims to recover benefits.

Kross asserts that his demand for reinstatement cannot be granted under the claims procedure, and for that reason he need not exhaust this administrative remedy. He relies on *Clayton v. UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), in which the Supreme Court held that exhaustion of intraunion procedures was not required where such procedures could not give the employee all the substantive relief he sought. Were it beyond question in this case that Kross could not obtain all the relief he seeks from the claims procedure, then *Clayton* would control, but such is not the case here. *Cf. Tinsley v. United Parcel Service, Inc.,* 665 F.2d 778, 780 (7th Cir. 1981) (exhaustion required where all relief sought available from intraunion procedures).

The Western Electric Pension Plan allocates broad powers to the Employees' Benefit Committee, which is charged with the administration of the Plan. Under the Plan in effect in 1975, the Committee had "the specific powers elsewhere herein granted ... and ... such other powers as may be necessary in order to enable it to administer the Plan." One of the specific powers granted the Committee was the power to "determine conclusively for all parties all questions arising in the administration of the Plan." [8]

In view of this language, as well as the inability of those charged with the administration of the Plan to predict the outcome if Kross's claim were brought under the Plan's claim procedure, and given that the question of exhaustion under Section 510 is one of first impression, the court determines that the preferable course is to require Kross to attempt to exhaust his administrative remedies. It may develop that these remedies are inadequate because they cannot furnish all the relief sought, but it is, and will continue to be, impossible to establish this for certain until the Committee has had an opportunity to deal with a specific case.

Accordingly, the court concludes that exhaustion is required in this case and grants defendant's motion for summary judgment.

8. Substantially the same language appears in the Plan as amended January 1, 1976.