William J. KROSS, Plaintiff-Appellant,

v.

WESTERN ELECTRIC COMPANY, INC., Defendant-Appellee.

No. 82–1391.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1982.

Decided March 9, 1983.

Rehearing and Rehearing En Banc Denied June 13, 1983.

Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff-appellant.

Charles C. Jackson, Chicago, Ill., for defendant-appellee.

Before BAUER and COFFEY, Circuit Judges, and BONSAL,* Senior District Judge.

COFFEY, Circuit Judge.

The plaintiff William Kross brought this class action against his former employer, Western Electric, alleging that he and the class[1] he seeks to represent were "discharged"[2] in violation of § 510 of the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1140. The District Court for the Northern District of Illinois granted summary judgment in favor of the defendant Western Electric on the grounds that: (1) the plaintiff, by alleging that Western Electric discharged him to avoid continuing to make payment for his company-provided life and medical insurance, had failed to state a claim under § 510 of ERISA; and (2) Kross was precluded from suing for interference with the vesting of his service pension as he failed to exhaust available administrative remedies prior to bringing suit. We affirm in part and reverse in part.

The plaintiff Kross was employed as an engineer at Western Electric's Hawthorne Works Division in Chicago from 1953 to 1975. As a Western Electric employee, Kross was covered by a company-provided medical and life insurance program. In addition, had Kross not been discharged but had he continued in Western Electric's employ for another two years he would have attained a vested "service pension" in 1977.[3]

On September 30, 1975, the plaintiff was "discharged" as part of a substantial reduction of the defendant's Hawthorne Works facility workforce which, Western Electric contends, was brought about by reduced demand for the technologically obsolescent mechanical switching equipment manufactured at the Hawthorne plant. The district court took judicial notice of the substantial reduction in the workforce at the Hawthorne Works facility over the past several years. At the time of his discharge, Western Electric gave Kross: (1) a $17,741 "layoff allowance"; (2) a $1,714 "allowance in lieu of advance notice"; and (3) a $315 "allowance in lieu of vacation."

On September 29, 1980, five years after being discharged, the plaintiff filed a class action suit alleging that Western Electric violated § 510 of ERISA, 29 U.S.C. § 1140. The gravamen of Kross's action is paragraph 5 of the complaint which recites:

"5. As an employee of Western Electric, Kross was a participant in Western Electric's pension, health and welfare, dental, disability and life insurance plans.

---

* The Honorable Dudley B. Bonsal, Senior District Judge of the Southern District of New York, is sitting by designation.

1. The complaint defined the class as "all other past and present employees of Western Electric who are or were entitled to the protection of" ERISA. Although the class allegations of the complaint are not at issue in this appeal, we express grave doubts as to whether this extremely broad "class" could be certified under Fed.R.Civ.P. 23.

2. The complaint alleges that Kross was "discharged," while Western Electric contends that Kross was merely "laid off." The two terms were distinguished in CBS Inc. v. International Photographers, 603 F.2d 1061, 1063 (2d Cir. 1979):

"The ordinary meanings of the terms discharge and layoff have long been recognized by the courts. A discharge normally means the 'termination of the employment relationship or loss of a position.' A layoff, on the other hand, is ordinarily a 'period of temporary dismissal'; inherent in the term is the anticipation of recall." (citations omitted). The distinction between the two terms is not relevant to our decision in the instant case. For the purpose of this appeal from an order of summary judgment against the plaintiff, we will use the term "discharge" since that is the term utilized by the plaintiff in the complaint. See Schaefer v. First National Bank of Lincolnwood, 509 F.2d 1287, 1297 (7th Cir.1975).

3. The plaintiff had previously qualified for a "deferred service pension" with monthly payouts to begin if and when Kross reaches age 65, in 1987.

At the time of his discharge, Kross had 21 years 8 months of credited service in the pension plan. The discharge of Kross was for the purpose of preventing Kross from, and interfering with, the attainment of rights under the said pension, helath [sic] and welfare, dental, disability, and life insurance plans. For example, by virtue of his discharge, Kross, *inter alia*, (1) will not be able to apply for early retirement benefits, (2) was forced to self-pay in order to retain continued life insurance coverage, at an annual cost of approximately $600, with his life insurance coverage being reduced from $50,000 to $10,000, (3) forced to pay approximately $100.00 per month for a period of six months following his discharge in order to retain medical and dental insurance coverage, and at the end of said six-month period said medical insurance was cancelled, and (4) has since incurred and paid in excess of $4,000 in uninsured dental bills by reason of the aforesaid cancellation of dental insurance."

The complaint does not allege that Kross ever sought redress for his claims through any administrative procedure established by Western Electric or any of the company's benefit plans. In terms of relief, the complaint sought: (1) an injunction prohibiting the defendant from violating ERISA; (2) reinstatement for the plaintiff and members of the purported class; and (3) that "plaintiff, and the class he represents, be awarded damages equal in an amount to backpay and the other fringe benefits to which they would have been entitled had they not been unlawfully discharged . . . ."

In response to the complaint, on May 7, 1981, the defendant Western Electric moved for summary judgment asserting that Kross could not maintain this action as he had failed "to exhaust Defendant's benefit fund procedures before filing this action." In support of its motion for summary judgment, the defendant submitted a copy of Western Electric's Employees' Pensions, Disability Benefits, and Death Benefits Plan ["the Plan"], which governed, *inter alia*, Western Electric's service pension program. The Plan, however, did not pertain to the defendant's life and medical insurance programs, which are also involved in this lawsuit. Western Electric's pension plans were administered by a five-member committee, known as the Employees' Benefit Committee, appointed by Western Electric's Board of Directors. This Employees' Benefit Committee was granted specific powers relating to the administration of the Plan, including the specific power to "determine conclusively . . . all questions arising in the administration of the Plan."[4] In further support of its motion for summary judgment, Western Electric submitted affidavits of (1) the Department Chief, Benefit Services, at Western Electric's Hawthorne Works; (2) the Chicago Area Regional Benefit Manager; and (3) the Secretary of the Employees' Benefit Committee. Each of the affiants stated that Kross failed to file a claim with the Employees Benefit Committee alleging unfair interference with attainment of his service pension and further that had Kross filed such a claim, it would have been treated and processed as a claim under the procedure established in the Plan. The affidavits submitted on behalf of Western Electric did not mention, set forth or describe the administrative procedures available to Kross with regard to his claim that Western Electric terminated him to avoid paying further premiums on Kross's company-provided life and health insurance. Our review of the record discloses that the medical and life insurance plans are entirely separate and distinct from the service pension plan contained in the "Employees Pension, Disability Benefits and Death Benefits Plan." Although there may (or may not) in fact be an administrative claims procedure relating to Western Electric's company-provided medical and life insurance plans, the

---

**4.** After January 1, 1976, Western Electric's Plan was amended to conform with the then newly enacted ERISA regulations. Under this amended plan, separate Area Benefit Committees were established at local Western Electric facilities, including the Hawthorne Works facility, and the Employees' Benefit Committee's function was changed to one of reviewing decisions made by the local Area Benefit Committees.

record contains no evidence of the existence of such a claims procedure.[5]

Kross does not seek to refute Western Electric's assertion that he never availed himself of any internal administrative procedures to challenge his discharge. In fact, Kross admits that he neither spoke nor wrote to any Western Electric representative concerning his rights under either Western Electric's pension and/or insurance plans.

The district court granted summary judgment in favor of Western Electric on February 1, 1982. In its accompanying opinion published at 534 F.Supp. 251, the district court summarized the plaintiff's cause of action as follows: "Kross alleged that Western Electric terminated him for two purposes: to avoid paying for his insurance benefits and to prevent his service pension from vesting." *Id.* at 254. The district court found that Kross failed to state a claim under § 510 of ERISA, 29 U.S.C. § 1140, with respect to his allegation that Western Electric discharged him to avoid paying for his insurance benefits, reasoning that since Kross "was already a participant in the insurance plans, he was not prevented from attaining rights under the plan." *Id.* Turning to Kross's claim that he had been terminated to prevent his service pension from vesting, the court stated:

"the court concludes that exhaustion is required in this case and grants defendant's motion for summary judgment." *Id.* at 256.

On appeal, the plaintiff Kross argues that the district court's summary judgment order should be reversed for three reasons: First, the plaintiff contends that the district court erred in finding that Kross failed to state a claim under § 510 ERISA, 29 U.S.C. § 1140, in alleging that Western Electric discharged Kross to avoid making continued payments for his company-provided life and medical insurance. Second, the plaintiff argues that the district court erred by apply-

ing the exhaustion doctrine to his service pension claim because the policies underlying the exhaustion doctrine are not applicable as (1) his claim involves interpretation of the provisions of ERISA and (2) his suit is brought against Western Electric rather than a particular pension fund. Finally, Kross asserts that summary judgment was not proper in this case as there exists a disputed issue of material fact; i.e., the adequacy of relief available to Kross under the relevant administrative procedures.

## I.

Kross's complaint alleged that he was discharged in violation of § 510 of ERISA, 29 U.S.C. § 1140, which recites:

"Interference with protected rights

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this Act or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section."

## A. FAILURE TO STATE A CLAIM

■ Section 510 of ERISA prohibits an employer from discharging an employee "for the purpose of interfering with the attainment of any right to which [an employee] may become entitled" under an employee benefit plan. In the instant case, the district court concluded that since Kross "was already a participant in the insurance plans, he was not prevented from attaining

---

**5.** Section 503 of ERISA, 29 U.S.C. § 1133, requires that every employee benefit plan have a claim and appeal procedure. For the purposes of this appeal from the district court's entry of

summary judgment, we are confined to the lower court record and cannot merely presume that Western Electric has complied with § 503 vis-a-vis the medical and life insurance plan.

rights under the plans." 534 F.Supp. at 254. This conclusion is apparently based on the theory that once an employee has qualified for participation in an insurance plan, the employee can attain no increased "right" under that particular insurance plan regardless of his period of uninterrupted employment with the particular company. The defendant cites no authority to support this novel theory, and our review of the case law and ERISA's legislative history reveals no support for such a narrow reading of § 510.

In considering the allegations of Kross's complaint, we are guided by the principle that "[a] complaint when tested by summary procedures must be given the benefit of every possible implication." *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1297 (7th Cir.1975). Kross's complaint alleges that Western Electric discharged him "for the purpose of preventing Kross from, and interfering with, the attainment of rights under [Western Electric's] ... helath [sic] and welfare, dental, and life insurance plans." Kross further alleges that, as a result of his improperly motivated discharge, he was, for example, deprived of continued coverage under the medical insurance plan and had to pay medical and dental bills which, but for his discharge, would have been paid by the company-provided insurance plan. The determinative question, then, is whether insurance coverage for medical and dental expenses incurred is a "right" under those insurance plans for purposes of § 510 of ERISA.

Our consideration of the scope of § 510 must begin, of course, with the language of the statute. "In determining the scope of a statute, we look first to its language." *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Section 510, read in its proper context, prohibits the discharge of an employee "for the purpose of interfering with the attainment of *any* right to which such participant *may* become entitled" under an employee benefit plan. Clearly, Congress would not have adopted such broad and encompassing language had it intended that

§ 510 be read as narrowly as the district court in the instant case has construed it. Moreover, there is no testimony or evidence in the record to support the district court's restrictive interpretation of § 510. Rather, it is evident from the report of the House of Representatives' Committee on Education and Labor that Congress intended ERISA to remedy a broad range of problems in the field of employee benefit plans:

> "POLICY OF 'EMPLOYEE BENEFIT SECURITY ACT'
>
> "Underlying the provisions of this Act is a recognition of the necessity for a comprehensive legislative program dealing not only with malfeasance and maladministration in the plans, or the consequences of lack of adequate vesting, but also with the broad spectrum of questions such as adequacy of funding, plant shut downs and plan terminations, adequate communication to participants, and, in short, the establishment of certain minimum standards to which all private pension plans must conform if the private pension promise is to become real rather than illusory."

H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4647–48. The Second Circuit, after reviewing the legislative history of ERISA, concluded:

> "ERISA is thus a remedial statute, the coverage of which should be liberally construed, and exemptions from which should be confined to their narrow purpose."

*Rose v. Long Island R.R. Pension Plan,* 690 F.2d 49, 54 (2d Cir.1982).

In light of the fact that ERISA is a remedial statute to be liberally construed in favor of employee benefit fund participants, we find no support for the district court's conclusion that since Kross "was already a participant in the insurance plans, he was not prevented from attaining rights under the plan." 534 F.Supp. at 254. Rather, we conclude that Kross's allegations state a claim under § 510 of ERISA since such allegations, if proven, might es-

tablish that Kross was discharged for the purpose of interfering with the attainment of a right under the insurance plans; e.g., payment for medical and dental expenses incurred.

Moreover, adoption of the district court's position that § 510 of ERISA does not protect an employee who has already qualified for coverage under a company-provided insurance plan would lead to an anomalous result. Under the district court's restrictive view, § 510 would protect a probationary employee who had not yet qualified for a company-provided insurance plan from an improperly motivated discharge, while at the same time giving no protection to a more senior employee who had already qualified for participation in the insurance plan. There is no evidence that Congress intended ERISA to afford less protection to senior employees than that enjoyed by probationary or junior employees who have not qualified for coverage under particular employee benefit plans. Certainly, Congress did not enact ERISA with the intent to negate the long established practice of affording greater benefits and protections to those employees who have more seniority in time of service with the company than to junior employees. Accordingly, we reject the district court's unsupported and very narrow interpretation of § 510.

6. Judge Bonsal dissents from this portion of the opinion on the basis that "there is no evidence to support even an inference that Western Electric discharged Kross for the purpose of interfering with the attainment of any rights to which he might become entitled under these policies." This statement overlooks the fact that Western Electric's affidavits presented to the district court in support of their motion for summary judgment deal solely with the plaintiff's failure to exhaust administrative remedies pertaining to his claim for a service pension. The affidavits contained in the record do not even attempt to refute the complaint's allegation that Kross was "discharged" for the purpose of interfering with the attainment of rights under the life and medical insurance plans. In the absence of evidence in the record to refute the complaint's allegation that Kross's "discharge" was unlawfully motivated, we are guided by the principle that "[a] complaint when tested by summary procedures must be given the benefit of every possible implication."

In summary, we conclude that Kross, by alleging that he was discharged for the purpose of depriving him of continued participation in Western Electric's company-provided life and medical insurance plans, has stated a claim cognizable under § 510 of ERISA.[6] We reverse the district court's finding that these allegations failed to state a claim under § 510 of ERISA and remand this portion of the case to the district court for further proceedings consistent with this opinion.

## B. THE EXHAUSTION DOCTRINE

The substantive rights established in § 510, quoted above, may be enforced through civil actions brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, which states:

"Civil Enforcement

"Persons empowered to bring civil actions

"(a) A civil action may be brought—

(1) by a participant or beneficiary—

\*　　\*　　\*　　\*　　\*　　\*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\*　　\*　　\*　　\*　　\*　　\*

Schaefer v. First National Bank of Lincolnwood, 509 F.2d 1287, 1297 (7th Cir.1975). Moreover, we must remember that in deciding a motion for summary judgment, "the ruling is to be made on the record the parties have actually presented, not on one potentially possible." Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399, 405 (2d Cir.), cert. denied, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945); Barrett v. Craven County Bd. of Ed., 70 F.R.D. 466 (E.D.N.C.1976).

With regard to Judge Bonsal's observation that our holding may overburden the federal courts, it is important to note: (1) Continued adherence to the exhaustion of remedies requirement will serve to dispose of many ERISA claims before they reach the federal courts; and (2) To the extent that the broad language of § 510 may possibly result in increased litigation, the onus must rest with Congress, and not with this court. Our role is only to interpret the language of ERISA.

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . ."

It is clear from the language of § 502(a), quoted above, that § 502(a)(1) encompasses civil actions for violations of the *terms of a benefit plan,* while § 502(a)(3) authorizes civil actions for violations of *the provisions of ERISA* itself. Therefore, Kross's civil action against Western Electric falls within the purview of § 502(a)(3) because it is based on alleged violations of the provisions of § 510, rather than violations of the terms of a particular benefit plan.[7]

■ Although § 502, 29 U.S.C. § 1132, quoted above, provides that a civil action may be brought to redress violations of ERISA, it is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing such a civil action. Rather, application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court. In *Janowski v. Local 710 Pension Fund, International Brotherhood of Teamsters,* 673 F.2d 931 (7th Cir. 1982), this court was presented with the issue of whether the exhaustion doctrine should be applied in a suit arising under section 502 of ERISA, 29 U.S.C. § 1132. Although *Janowski* held that exhaustion of administrative remedies was not required in that case, the court stated that in civil actions brought under ERISA:

> "[the exhaustion doctrine's] application is committed to the sound discretion of the [trial] court. . . . Where exhaustion is not specifically required by statute, the district court's discretionary decision may

only be disturbed on appeal when there has been a clear abuse of discretion." *Id.* at 935 (citations omitted).

■ Kross argues that the district court abused its discretion when it applied the exhaustion of remedies doctrine to his claim that he was terminated to prevent his service pension from vesting. We reject this argument and agree that strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes, mandates the application of the exhaustion doctrine in this case.

In *Challenger v. Local Union No. 1 of Intern. Bridge,* 619 F.2d 645, 649 (7th Cir. 1980), this court recognized the strong policy which underlies the exhaustion doctrine in ERISA suits:

> "[W]e note that Congress intended fund trustees to have primary responsibility for claim processing, as evidenced by the specific requirement in § 503, 29 U.S.C. § 1133, of a claim and appeal procedure for every employee benefit plan. To make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act. It would also burden employee benefit funds with substantial expense. We believe that Congress, in adopting ERISA, did not require or contemplate such a result." (citation omitted).

The Ninth Circuit in *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980) persuasively set forth in greater detail the compelling considerations which require an ERISA claimant, in most situations, to exhaust administrative remedies before bringing suit in federal court:

> "[T]he institution of . . . administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settle-

---

7. Section 502(a)(3) encompasses a claim seeking equitable relief. In this action, Kross seeks equitable relief in the form of (1) an injunction forbidding Western Electric from violating ERISA; (2) an order reinstating him to his job; and

(3) an award of backpay. Like injunctive relief, a backpay award is an equitable remedy. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

ment; and to minimize the cost of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used. Moreover, the trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA, sections 401 through 414, 29 U.S.C. §§ 1101–1114, and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes. The text of ERISA and the policies underlying that text, far from suggesting that Congress intended to abrogate the exhaustion requirement in the case of suits under ERISA or that sound policy would counsel its abrogation by the courts, suggest just the opposite.

"Finally, a primary reason for the exhaustion requirement, here as elsewhere, is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies.

"In sum, we conclude that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so." (citation omitted).

Despite the firmly established policy favoring exhaustion of remedies in ERISA cases, Kross argues that the district court abused its discretion by applying the exhaustion doctrine in this case because (1) this suit involves purported violations of ERISA, rather than the provisions of a particular pension plan, and thus only a federal court is qualified to consider the plaintiff's claims; and (2) since the defendant in this suit is Western Electric Company, rather than the Employees' Pensions, Disability Benefits, and Death Benefits Plan, exhaustion of the Plan's administrative procedures should not be required. We find these arguments to be insufficient to override the well-established federal policy, and supporting case law, favoring exhaustion of administrative remedies prior to bringing an ERISA-based lawsuit in federal court. Accordingly, we hold that the district court did not abuse its discretion when imposing the exhaustion doctrine in this case and denying the plaintiff's claim that Western Electric improperly interfered with the vesting of his service pension.

## II. SUMMARY JUDGMENT

The plaintiff argues that the district court erred in granting summary judgment as the pleadings on file in this case establish the existence of a disputed issue of material fact. More specifically, the plaintiff argues that, under *Clayton v. Automobile Workers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981),[8] exhaustion of administrative procedures is required only if the relevant administrative procedure can afford the claimant the full measure of relief he seeks in the lawsuit. Kross in this lawsuit seeks, *inter alia,* reinstatement of his job. Thus, Kross contends that under *Clayton,* entry of summary judgment was improper as there exists a disputed issue of material fact; i.e., whether Western Electric's Employee Benefit Committee could reinstate Kross to his former position with Western Electric. We reject the plaintiff's argument because the *Clayton* decision is distinguishable from the instant case in the following two respects.

First, *Clayton* involved a suit by an employee for an alleged violation of a union's duty of fair representation when processing the employee's grievance, wherein the employee had previously exhausted the administrative procedures established under the

---

8. Cases such as *Clayton* arising under § 301 of the Labor Management Relations Act (29 U.S.C. § 185) may be used as precedent in interpreting the procedural requirements of ER-ISA. *See* H.R.Conf.Rep. No. 93–1280, 93d Cong., 2d Sess. *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5106–07.

collective bargaining agreement. *Clayton* dealt solely with the question of whether "exhaustion of *internal* union procedures" was necessary in a case alleging a union's breach of its duty of fair representation. *Id.* at 687, 101 S.Ct. at 2094. (emphasis in original). In fact, the court expressly stated that the general rule remains:

"An employee seeking a remedy for an alleged breach of the collective bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185(a). *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–653 [85 S.Ct. 614, 616, 13 L.Ed.2d 580] (1965); *see Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563 [96 S.Ct. 1048, 1055, 47 L.Ed.2d 231] (1976); *Vaca v. Sipes,* 386 U.S. 171, 184 [87 S.Ct. 903, 913, 17 L.Ed.2d 842] (1967)."

Thus, even under *Clayton,* exhaustion of remedies is the general rule, with a very limited exception being applicable in a breach of fair representation case where an employee has previously exhausted the procedures established by the collective bargaining agreement and the employee can prove that resort to the intra-union procedures would be a "useless gesture." *Id.* at 693, 101 S.Ct. at 2097. In the instant case, the plaintiff Kross has failed to take the first step of exhausting his remedies before the Employees' Benefit Committee. Thus, we agree with the district court that the exhaustion doctrine is applicable to the plaintiff's claim that Western Electric discharged him from his employment to prevent his service pension from vesting.

Second, the Supreme Court in *Clayton* did not set forth an absolute rule that exhaustion will be excused in cases in which the relevant administrative procedure could not afford the claimant the full relief sought in the lawsuit. Rather, *Clayton* held that exhaustion is required "[w]here internal union appeals procedures can result in either complete relief to an aggrieved employee or

reactivation of his grievance . . . ." *Id.* at 692, 101 S.Ct. at 2097. Construing the *Clayton* holding, this court in *Miller v. General Motors Corp.,* 675 F.2d 146, 149 (7th Cir.1982) stated:

"The need for complete relief . . . is not compelling, and we do not think *Clayton* requires it, where higher principles favoring collective negotiations and resolution of disputes through negotiated procedures may still be given effect."

Similarly, in the instant case, we conclude that requiring Kross to exhaust his administrative remedies prior to bringing a lawsuit for interference with the vesting of his service pension under § 510 of ERISA, 29 U.S.C. § 1140, regardless of whether or not such administrative remedies can reinstate him in his job, would not be a "useless gesture" and would support the important public policy of encouraging private rather than judicial resolution of disputes under ERISA. *See, Challenger,* 619 F.2d at 649; *Amato,* 618 F.2d at 567–68. We hold that the district court did not err by entering summary judgment against the plaintiff with regard to his claim for interference with the vesting of his service pension.

We reverse the district court's finding that the plaintiff failed to state a claim under § 510 of ERISA when he alleged that Western Electric discharged him from his employment to avoid making continued payments for his company-provided medical and life insurance and remand this portion of the case to the district court for further proceedings consistent with this opinion. We affirm that portion of the district court's decision granting summary judgment in favor of the defendant Western Electric on the basis that the plaintiff failed to exhaust his administrative remedies relating to his claim for a service pension.

BONSAL, Senior District Judge, concurring and dissenting.

I concur in the majority's opinion affirming the district court with respect to plaintiff's claim under the pension plan. However, I dissent from the majority's remand

to the district court for further proceedings in connection with the company-provided life and medical insurance policies. There is no evidence to support even an inference that Western Electric discharged Kross for the purpose of interfering with the attainment of any rights to which he might become entitled under these policies. Therefore, I see no reason to burden the district court with further proceedings and would affirm its decision in all respects.