**Slobodan SRECKOVIC, Plaintiff,**

v.

**INTERNATIONAL HARVESTER COMPANY, Defendant.**

**No. 84 C 6269.**

United States District Court, N.D. Illinois, E.D.

Nov. 19, 1984.

Bogdan Martinovich, Ray & Glick, Libertyville, Ill., for plaintiff.

David J. Parsons, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Slobodan Sreckovic ("Sreckovic") has sued defendant International Harvester Company ("Harvester") for alleged violations of the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1001, *et seq.* ("ERISA"). Harvester has moved to dismiss or for summary judgment,[1] arguing that Sreckovic has not exhausted vari-

---

1. Because the parties have attached affidavits and other documents to their memoranda, we will treat Harvester's motion as one for summa-ry judgment under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).

ous contractual remedies. For the reasons stated below, we deny Harvester's motion.

The dispute centers about Harvester's termination of Sreckovic's disability benefits. The parties seem to agree about the following basic facts. A Harvester employee for about eight and one half years, Sreckovic suffered a work-related injury on October 23, 1981. He received benefits for 52 weeks, and on December 20, 1982 was awarded monthly "Long Term Disability Benefits" of $860.00, retroactive to October 23, 1982. Harvester informed him that he could receive these benefits until May 8, 1990 so long as he remained "totally disabled." However, believing that his condition had improved, Harvester terminated Sreckovic's benefits as of July 31, 1983. The Union's Local Benefits Representative, Gerald L. Schlabach ("Schlabach"), filed a grievance on behalf of Sreckovic. Harvester and Schlabach agreed to obtain a third doctor's opinion on Sreckovic's condition. A Dr. Menelo Avila examined Sreckovic on April 5, 1984. Based on its interpretation of Dr. Avila's report, Harvester declined to reinstate Sreckovic's benefits. This lawsuit followed.

The parties do not agree about the facts material to the pending motion. First, they disagree about the source of Sreckovic's benefits. Harvester asserts that Sreckovic received benefits under the "Long Term Disability Benefit" program ("Disability Plan"), not the so-called "Non-Contributory Retirement Plan" ("Pension Plan") under which Sreckovic makes its claim. Harvester reasons that because Sreckovic never applied for benefits under the specific plan named in his complaint, "no benefits are due him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Second, the parties disagree about whether Sreckovic exhausted the contractual remedies of the relevant collective bargaining agreement between Harvester and his Union. We take up each issue in turn.

### The Source of the Benefits

We agree with Harvester that Sreckovic did not receive benefits under the Pension Plan, and that he erroneously named that Plan in his complaint.[2] However, we do not find that error fatal to the complaint. While Sreckovic cannot bring an action based on the Pension Plan because of his failure to apply for benefits under that Plan, see, e.g., Kross v. Western Elec. Co., Inc., 701 F.2d 1238, 1244–5 (7th Cir.1983) (ERISA generally requires exhaustion of Plan remedies), it is clear that his naming of that Plan, rather than the Disability Plan, is a simple factual error. Harvester does not really dispute that Sreckovic wants to restore the benefits he previously received, which, as Harvester admits, were paid out under the Disability Plan. Rather than dismiss the case because of this error of nomenclature, we will grant Sreckovic leave to amend his complaint to allege the proper plan.[3]

**2.** Harvester submits an affidavit of Dana Hansen, its Pension Plans manager, who states that Sreckovic never applied under the Pension Plan. Sreckovic refers us to a booklet he received from Harvester concerning that Plan, and argues that under the terms of the booklet, he was receiving benefits under that Plan. That is plainly not the case, since the booklet states that the Pension Plan requires ten or more years of "credited service," and Sreckovic admits in his complaint that he was employed for only eight and one-half years. Schlabach's affidavit that Sreckovic received his benefits under the Retirement Plan does not create a genuine issue of material fact, since no foundation was laid as to how Schlabach is competent to testify from per-

sonal knowledge as to the source of the benefits. We therefore conclude that no genuine issue of material fact exists as to the source of the benefits; but in light of our discussion below, this finding does not prejudice Sreckovic.

**3.** This situation is similar to where evidence adduced at trial does not conform to the pleadings. See Fed.R.Civ.P. 15(b). When a variance occurs at trial, the modern Rules do not strap a party to the literal words of his or her pleading. This is consistent with the general policy of the Rules, as expressed in Rule 1, to dispense with traditional pleading booby traps and instead "secure the just, speedy and inexpensive determination of every action." Similarly, where, as

### Exhaustion of Remedies

■ Regardless of whether Sreckovic received benefits under the Pension Plan or Disability Plan, Harvester's termination of his benefits comes within the ambit of ERISA. Under 29 U.S.C. § 1132(a)(1)(B) Sreckovic may sue "to recover benefits due to him under the terms of his plan." Both the Retirement Plan and the Disability Plan are "plans" covered by ERISA. 29 U.S.C. § 1002(1), (2), (3); *see Roe v. General American Life Ins. Co.*, 712 F.2d 450, 452 (10th Cir.1983) (company's disability benefit plan falls under ERISA).

Harvester argues that Sreckovic failed to exhaust the contractual remedies mandated by the Collective Bargaining Agreement. Although ERISA does not expressly demand exhaustion of remedies, the Seventh Circuit has held that exhaustion of remedies should be imposed in most circumstances. *See Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1244–5 (7th Cir. 1983); *Challenger v. Local Union No. 1 of Intern. Bridge*, 619 F.2d 645, 649 (7th Cir. 1980). Sreckovic does not argue that the exhaustion doctrine does not apply to him; nor does he claim that we should apply one of the exceptions to the exhaustion doctrine. *See, e.g., Macon v. Youngstown Sheet and Tube Co.*, 698 F.2d 858, 860 (7th Cir.1983). Rather, he claims that he has in fact exhausted his contractual remedies.

We are thus presented with a factual dispute about whether the step Sreckovic has taken—seeing Dr. Avila—exhausted his remedies under the relevant Collective Bargaining Agreement. The affidavit of Mr. Schlabach, the Local's benefits representative, asserts that the grievance and the ensuing physical examination exhausted Sreckovic's contractual remedies. Harvester counters that Sreckovic never requested an arbitration hearing, implying that he was bound to do so. Incredibly, while the parties skirmished over whether Sreckovic exhausted his contractual remedies, neither party cited any provision of the Collective Bargaining Agreement and neither attached copies of the relevant provisions. Moreover, although ERISA requires that Harvester create an internal review procedure for its Disability Plan, *see* 29 U.S.C. § 1133,[4] Harvester has not stated whether it has such a procedure or whether Sreckovic complied with it. Faced with this informational vacuum, the Court obtained a copy of the Collective Bargaining Agreement from Harvester's attorneys.[5] Our scan of the Agreement given to us reveals that Sreckovic has apparently exhausted his private remedies.

■ We begin by looking at the "Health Security Program Agreement" ("The Health Security Plan"), which under Part I, ch. III, provided the Long Term Disability

---

here, affidavits reveal a simple factual variance between the pleading and the proof, we see nothing to gain from dismissal, in light of Harvester's admission that the Disability Plan is the correct one, and in light of the lack of prejudice to Harvester from allowing Sreckovic to amend. We note that this result does not prejudice Harvester, especially because it apparently had an unwitting role in causing Sreckovic's confusion: when he asked Harvester to send him all information concerning available benefits, he received a booklet about the Pension Plan, but not the Disability Plan.

**4.** 29 U.S.C. § 1133 provides:
In accordance with regulations of the Secretary [of Labor], every employee benefit plan shall—
    *    *    *    *    *    *

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

**5.** We received two volumes: the "Main Labor Contract" and a volume which contains various benefits plans, including the "Health Security Program," which contains the Long Term Disability Plan, and the "Non-Contributory Retirement Plan." Although these Plans have expired, Harvester's counsel asserts they are "operative." We assume that the material terms of the current Collective Bargaining Agreement are unchanged.

Benefits Sreckovic received. Section 2, ¶ 9 of the Plan states that the usual arbitration procedures of the Main Labor Contract do not apply to disputes under the Health Security Plan:

> It is understood that no grievance procedure of any collective bargaining agreement between the parties hereto shall apply to this Agreement or any insurance contract in connection therewith and that any claim for an insured benefit will be presented for settlement only to the insurer.

Turning to Paragraph 13 of the Health Security Plan, we discover that:

> If a question of whether an employe is totally disabled for Long Term Disability purposes, or totally and permanently disabled for Life Insurance purposes is involved, the procedure for determining such dispute under the Non-Contributory Retirement Plan Agreement shall be utilized to determine such question and the Arbitrator shall be bound by the determination made under that procedure in making his decision.

Thus, to learn whether Sreckovic had to arbitrate, we must turn to the Pension Plan. Section 2(d)(8) of that Plan provides:

> (8) Since the question whether an employe is totally and permanently disabled is not made subject to arbitration, nor to determination by the Board, no arbitrator or the Board shall undertake to make a determination regarding the same. Such question shall be determined in the manner hereinafter set forth.

It seems clear, then, that Sreckovic was not required to arbitrate the question whether he remained totally disabled. The next paragraph of the Retirement Plan, Section 2(d)(8)(i) tells us that Sreckovic apparently did exactly what was required of him, that is, see an impartial physician:

> (i) Should disagreement arise as to whether an employe is totally and permanently disabled and should the disagreement not be resolved on the basis of the examination of the physician appointed by the Company, the Board shall appoint a physician or a clinic to examine the employe and render a decisive medical opinion concerning the totality and permanence of disability involved. Such physician shall be a member of the Medical Society nearest the employe's place of employment. The fees and expenses of such physician or clinic shall be borne equally by the Company and the Union. Should it be the judgment of such physician or clinic that at the time of making his examination it was too early to determine definitely whether the disability is total and permanent, the decision shall be postponed until the physician or clinic considers that sufficient time has elapsed to make such definite determination.

We cannot at this point say that the fact that the opinion of Dr. Avila was to be "decisive" precludes this lawsuit. Sreckovic states in his brief that Harvester arbitrarily terminated his benefits *contrary* to the opinion of Dr. Avila and the rest of the medical evidence. We thus think he has stated a claim under ERISA. 29 U.S.C. § 1132(a)(1)(B) (beneficiary may sue "to recover benefits due to him under the terms of his plan").

For the reasons stated above, we deny Harvester's motion for summary judgment on the exhaustion issue.

### Conclusion

Harvester's motion for summary judgment is denied provided Sreckovic amends his complaint as directed herein. Sreckovic is given leave to amend his complaint on or before December 10, 1984. Harvester is to respond on or before December 31, 1984. Should Sreckovic fail to amend as directed, Harvester's motion for summary judgment will be granted. The parties are to commence completing discovery forthwith. Status is reset for January 4, 1985, at 10:00

a.m., at which time the parties are to report if there is any remaining discovery. The parties are also to meet prior to the January 4, 1985 status conference for a preliminary settlement conference.

Harvester's accompanying motion for attorney's fees and costs under Fed.R.Civ.P. 11 is also denied.[6] It is so ordered.

---

[6.] There is an irony in Harvester's Rule 11 motion for attorney's fees and costs. In light of Harvester's failure to cite specific provisions of the Plans concerning dispute resolution, and in light of provisions which seem to plainly contradict its argument that arbitration was required, it is arguably *Harvester* who might have offended Rule 11. However, because Harvester has not spoken to our reading of the Plans, we do not now saddle it with Sreckovic's costs and fees from having to contest the motion to dismiss.