Robert D. GARRY, Plaintiff,

v.

TRW, INC., et al., Defendants.

Civ. A. No. C83–2663.

United States District Court,
N.D. Ohio, E.D.

Jan. 28, 1985.

Margaret Kazdin, Cleveland, Ohio, James M. Lyons, Gurley, Hanahan, Lyons & Manning, Painesville, Ohio, Brian E. Hurley, Cincinnati, Ohio, for plaintiff.

William H. Wallace, Thompson, Hine & Flory, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Plaintiff Robert D. Garry brings this action against defendants TRW, Inc., and two of its employees, Crawford T. Harvie and

Martin Coyle,[1] alleging that they discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* ("ADEA") and Ohio Rev.Code § 4101.17, and further alleging that they interfered with his retirement and profit-sharing benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Jurisdiction is proper pursuant to 28 U.S.C. § 1331, and 29 U.S.C. § 1132(f).

Pending before the Court are TRW's motion for summary judgment on Garry's claims for compensatory and punitive damages under Ohio law and its motion to strike portions of the amended complaint which allege that TRW's actions were wanton and malicious. Also pending is TRW's motion to dismiss and for summary judgment on the ERISA claims set forth in Count III.

Upon consideration, the motions are denied.

## I.

On June 2, 1983, Garry commenced this action by filing a complaint in the Cuyahoga County Court of Common Pleas. On June 27, 1983, TRW removed the action to this Court pursuant to 28 U.S.C. § 1441(b). Because Garry did not file a charge with the Equal Employment Opportunity Commission ("EEOC") before bringing this suit, he voluntarily dismissed his ADEA claim and subsequently refiled it by amended complaint after he filed a charge with the EEOC and complied with the 60 day waiting period requirement.

The parties do not dispute that Garry worked for TRW from December 14, 1965 until his discharge on December 10, 1982. Garry spent his first six years employed as an accountant and the next eleven years as an attorney. He was fifty-seven years old at the time of his discharge.

Garry alleges that he was discharged without just cause, and because of his age, as part of a TRW pattern or practice of discharging employees between the ages of 40 and 70, and he alleges that he was replaced by a younger employee. He further alleges that TRW provided retirement benefits and/or profit-sharing benefits to which he was entitled, and that he was discharged in order to deprive him of those benefits. Garry seeks reinstatement, and back-pay, including the value of lost fringe benefits, Social Security benefits, retirement benefits and profit-sharing benefits. He further seeks liquidated damages under the ADEA, and punitive and compensatory damages under Ohio law for his pain and suffering, humiliation, loss of reputation and embarrassment, and mental and emotional distress, plus costs of the action and expenses incurred during litigation, including attorneys fees.

## II.

■ TRW contends that compensatory and punitive damages are not awardable under Ohio's age discrimination statute, Ohio Rev.Code § 4101.17, and asks that summary judgment be entered in its favor on these claims for relief. This Court concludes that compensatory and punitive damages may be an "appropriate remedy" under the statute and dismissal of Garry's claims for such damages would therefore be premature.

Section 4101.17(A) provides:

No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between the employer and employee.

Section 4101.17(B) provides the remedies for infractions of 4101.17(A). The remedial section provides in pertinent part:

... If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to

---

**1.** "TRW" refers to all three defendants unless otherwise noted.

him for the costs, including reasonable attorney fees, of the action, or to reinstate the employee in his former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse him for costs, including reasonable attorney fees, of the action.

In considering questions of state law, this Court is bound by decisions of the highest court of the state, in this case the Ohio Supreme Court. *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290, 292 (6th Cir.1970). If the Ohio Supreme Court has not spoken, the Court is obligated to follow published intermediate Ohio appellate court decisions. *Id.* Absent any state cases, the Court must express its best judgment, based on available information, as to how the Ohio Supreme Court would rule if faced with the issue presented by this case. *Tennessee River Pulp v. Eichleay Corp.*, 708 F.2d 1055, 1057 (6th Cir.1983). The federal courts in Ohio have disagreed on the question of punitive and compensatory damages under Ohio Rev.Code § 4101.17. *Compare Bailey v. Container Corporation of America*, 594 F.Supp. 629 (S.D.Ohio 1984) and *Merkel v. Scovill, Inc.*, 573 F.Supp. 1055 (S.D.Ohio 1983), *appeal docketed*, No. 83–3893 (6th Cir. Dec. 13, 1983), (punitive and compensatory damages available under § 4101.17) *with Citro v. TRW, Inc.*, No. C82–2911 (N.D.Ohio October 12, 1984) and *Schlosser v. Firestone Tire & Rubber Co.*, 33 F.E.P. Cases 1401, 1405–1406 (N.D.Ohio 1983) (compensatory and punitive damages not available under *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144 (1976)). The Ohio Supreme Court has not interpreted Ohio's age discrimination statute since it was amended to provide a civil cause of action and accompanying civil remedies. *See Fawcett*, 46 Ohio St.2d 245, 348 N.E.2d 144.

In *Fawcett*, the Ohio Supreme Court held that Ohio Rev.Code § 4101.17 as it appeared in 1976, did not give rise to a private civil action for damages. This ruling was overruled by legislative enactment in 1979, when the Ohio General Assembly amended § 4101.17 to include, *inter alia*, language specifically permitting a person to institute a civil action under the statute, and permitting the award of reinstatement and/or compensation.

No mention of this legislative amendment is made in either of the decisions which rely on *Fawcett* to disallow punitive and compensatory damages and which TRW urges this Court to follow. In *Schlosser v. Firestone Tire & Rubber Co.*, the Court dismissed claims for compensatory and punitive damages stating:

> In Fawcett the Ohio Supreme Court held that a violation of provision [sic] of § 4101.17 of the Ohio Revised Code by an employer does not give rise to a civil action for damages. The legislature has specifically set forth the damages to which the plaintiff is entitled.

*Schlosser*, 33 F.E.P. cases at 1405. In *Citro v. TRW*, the Court followed its previous holding:

> As previously held by this Court in *Schlosser, supra,* the Ohio Supreme Court has held that a violation of a provision of § 4101.17 by an employer does not give rise to a civil action for damages, but only allows damages as specifically set forth by the legislature in the statute. *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245 (348 N.E.2d 144) (1976).

This Court is of the opinion that the holding in *Fawcett* no longer correctly interprets § 4101.17, having been disapproved and overruled by legislative enactment. The rulings issued in *Merkel v. Scovill, Inc.*, 570 F.Supp. 141, 159–160 and 573 F.Supp. 1055, 1061 (S.D.Ohio 1983) are consistent with the view this Court believes the Ohio Supreme Court would adopt if faced with this same question.

The language of § 4101.17 which specifically directs that "the court shall order an appropriate remedy ..." indicates that it would be improvident to dismiss a portion of a plaintiff's claim for relief before hearing what his injuries are and what is necessary to make him whole. As contrasted with the language of the federal age discrimination statute which strictly enumer-

ates what damages are awardable, the words "appropriate remedy" in the Ohio statute lead this court to conclude that a more expansive award of damages to victims of age discrimination was contemplated by Ohio lawmakers. Adopting TRW's view would preclude even a compensatory damage award of reimbursement for moving expenses which might be associated with securing alternate employment in a new location. Disallowing any claim for punitive damages would be even more restrictive than the ADEA which awards liquidated damages to victims of "willful" discrimination.

■ Recognizing that awards of liquidated damages under the ADEA and compensatory and punitive damages under Ohio law present the possibility of overlapping and duplicative awards, this Court agrees with the *Scovill* decision that relief under the state and federal statutes must offset one another:

> Compensatory damages under Ohio law include damages for pain and suffering, loss of reputation, humiliation and embarrassment. Liquidated damages under the ADEA are permitted to enable plaintiffs who have been victims of wilful discrimination to recover damages for non-pecuniary losses that are difficult to prove. At least seven courts of appeal, including our own, have held that ADEA liquidated damages are in lieu of damages for loss of reputation, humiliation, mental anguish and other such losses.
>
> Accordingly we find that to prevent double recovery for such damages, the awards for compensatory damages on the state claims must be reduced by the amount of the liquidated damages awarded under the ADEA.

*Merkel v. Scovill,* 570 F.Supp. at 150 (citations omitted).

■ This Court is not bound by unpublished decisions of an Ohio Court of Common Pleas. Consequently, the decision of the Lucas County Court of Common Pleas to which TRW cites is not dispositive of this question, nor is it persuasive, both because it carries no precedent for this Court and because it contains no discussion of relevant case law or citation to any authority. In the absence of any binding Ohio precedent to the contrary, this Court concludes that TRW's motion to dismiss Garry's claims for compensatory and punitive damages must be denied. The motion to strike portions of the complaint alleging that TRW's actions were wanton and malicious is also denied.

### III.

**A.**

TRW moves for summary judgment on Count III of Gary's amended complaint which alleges a violation of § 510 of ERISA, 29 U.S.C. § 1140. Section 510 prohibits employers from discharging employees for the purpose of interfering with their retirement or pension benefits. TRW contends that § 510 protects only employees whose benefits have not yet vested. Citing the facts that Garry's benefits had vested prior to his discharge and that he received and continues to receive all benefits to which he was entitled, TRW argues that Garry cannot, as a matter of law, have a cause of action under § 510. Section 510 of ERISA provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceedings relating to this Act or the Welfare and Pension Plans Disclosure Act. The provisions of sec-

tion 1132 of this title shall be applicable in the enforcement of this section.

█ Garry argues that his benefits were interfered with because his discharge prevented him from accruing increased pension and stock savings benefits over a longer period of employment. There is no dispute that Garry's benefits had vested prior to his discharge. However, there are genuine issues of material fact with respect to whether 1) TRW's purpose in discharging Garry was to cause him to receive benefits under the TRW Salaried Pension Plan and the TRW Stock Savings Plan which were less than he would have received if he had not been discharged, and 2) whether this purpose was effected by his discharge. TRW's own statement that "[a]mounts received under TRW's Salaried Pension Plan are based on years of service and the salary level achieved by individual workers" suggests that if Garry had worked longer, his benefits would have been greater. Garry makes precisely this allegation under § 510, and this Court concludes that § 510 does not preclude an employee from pursuing such a claim simply because his benefits have vested.

This Court's holding in *Houck v. Lee Wilson Engineering Co.*, No. C82–351 (N.D.Ohio July 23, 1984) is not inconsistent with the decision in the instant case. In *Houck*, it was undisputed that the plaintiff had achieved the maximum level of benefits available to employees. Continued years of service would not have increased the benefits to which she would have been entitled. Such is not the case with Garry. TRW presents a carefully worded affidavit which indicates "That Robert D. Garry was paid $117,308.59 which reflects all contributions made by him and by TRW, Inc. on behalf of Mr. Garry." Affidavit of John E. Lanz, Jr., TRW Senior Counsel, Benefits. The fact that TRW paid Garry all that he was entitled to at the time of his discharge is not dispositive of the questions of whether Garry would have been entitled to more benefits if he had not been discharged, or whether a reduction in benefits was a rea-

son for his discharge. Section 510 requires this Court to consider and resolve whether Garry was terminated for the purpose of interfering with his pension rights and preventing him from collecting increased benefits.

The Sixth Circuit's comments in *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980) that "[t]he legislative history [of § 510 of ERISA] reveals that the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights," do not provide exclusive support for TRW's position. Even if the Sixth Circuit's words can be interpreted to refer to employees whose benefits have not yet vested, the qualifying word "primarily" leaves room for a reading which extends § 510 protection to employees with vested benefits as well.

Moreover, the holding in *West v. Butler*, does not reach the issue presented here. In *West*, the plaintiffs were pension fund trustees who claimed that contributions to a pension fund were being interfered with because coal miners would not cross picket lines to earn wages upon which contributions to the pension fund were based. The Court of Appeals held that the pension fund trustees did not have a cause of action under § 510 to enjoin secondary picketing. *West*, 621 F.2d at 246. Section 510 was aimed solely at protecting individual rights with respect to working conditions and dismissals that affect an employee's pension benefits. *Id.* The discussion of ERISA's legislative history bolstered the court's distinction between the non-employer activity at issue in *West* and the employer activity targeted by ERISA. The Sixth Circuit did not hold that § 510 protects only employees whose pension rights have not vested.

Other cases cited by TRW likewise fail to establish the holding the company urges this Court to issue. In *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982), the plaintiff abandoned a claim that he had been fired for the purpose of interfering with his pension rights. His

former employer's motion for summary judgment was granted because "[p]laintiff's papers make clear that after after full discovery no evidence exists to indicate that defendants sought to interfere with his pension benefits." The *Titsch* court was able to resolve the factual dispute that still exists in Garry's suit. In *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911 (2d Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982), the Second Circuit held that § 510 did not provide a cause of action to a retiree who had been denied an invitation to a retirement banquet. The trial court found that he had been excluded not because the company intended to interfere with his retirement rights, or retaliate against him for exercising his rights, "but because the acrimony which had developed caused the company's officers reasonably to apprehend that if he attended, an unpleasant incident would occur ruining the dinner for those invited." *Pompano,* 680 F.2d at 916.

In contrast, a similar motion for summary judgment by the employer in *Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357, 360 (E.D.Mo.1979) was denied because "[w]hether or not plaintiff's rights were vested within the meaning of ERISA at the time of his discharge is irrelevant to this cause of action." *See also Kross v. Western Electric Co., Inc.,* 701 F.2d 1238 (7th Cir.1983). The Seventh Circuit reversed the district court's grant of summary judgment and the district court's finding that since the employee had already qualified for the company insurance plan, he was not protected by § 510:

... [The district court's] conclusion is apparently based on the theory that once an employee has qualified for participation in an insurance plan, the employee can attain no increased "right" under that particular insurance plan regardless of his period of uninterrupted employment with the particular company. The defendant cites no authority to support this novel theory, and our review of the case law and ERISA's legislative history

reveals no support for such a narrow reading of § 510.

\* \* \* \* \* \*

... There is no evidence that Congress intended ERISA to afford less protection to senior employees than that enjoyed by probationary or junior employees who have not qualified for coverage under particular employee benefit plans. Certainly, Congress did not enact ERISA with the intent to negate the long established practice of affording greater benefits and protections to those employees who have more seniority in time of service with the company than to junior employees. Accordingly, we reject the district court's unsupported and narrow interpretation of § 510.

701 F.2d at 1242–1243.

B.

■ An additional argument by TRW raised in support of its motion for summary judgment is Garry's failure to utilize and exhaust the administrative claim procedures provided in TRW's pension and stock savings plans. The exhaustion of administrative remedies is not a prerequisite to bringing a civil action to redress violations of § 510 of ERISA. *Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir. 1984); *Kross v. Western Electric Co.,* 701 F.2d 1238, 1244 (7th Cir.1983); *Janowski v. Local 710 Pension Fund, International Brotherhood of Teamsters,* 673 F.2d 931 (7th Cir.1982) *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982). However, TRW urges this Court to follow the *Kross* decision which concluded that, although exhaustion is not required, the strong policy encouraging private resolution of ERISA-related disputes makes exhaustion the better practice.

■ This Court is persuaded that the holding in *Amaro* presents the better view. In *Amaro,* the Ninth Circuit rejected the *Kross* court's analysis and distinguished the cases upon which *Kross* relied, including *Challenger v. Local Union No. 1 of International Bridge,* 619 F.2d 645 (7th Cir.1980); and *Amato v. Bernard,* 618 F.2d

**164**

559 (9th Cir.1980). Both of the cases on which *Kross* relied involved violations of the terms of pension plans. In contrast, Garry's suit, and the suit in *Amaro*, involve alleged violations of the provisions of ERISA. TRW's administrative process is intended to resolve disputes for claims for benefits under its plans. Garry's suit does not allege that TRW violated a provision of his pension or stock savings plan. Rather, he contends that his termination by TRW violated a provision of ERISA. *See Amaro* at 751:

> Both *Challenger* and *Amato*, the cases relied on by *Kross*, dealt with the rights of a party under a pension plan that falls within ERISA coverage. Both cases contained internal appeal procedures, congressionally mandated by section 503, that were designed to hear the claims presented in those cases. We are faced solely with an alleged violation of a protection afforded by ERISA. There is no internal appeal procedure either mandated or recommended by ERISA to hear these claims. Furthermore, there is only a statute to interpret. That is a task for the judiciary, not an arbitrator. *Alexander*, 415 U.S. at 57, 94 S.Ct. at 1024. Therefore, a "primary reason for the exhaustion requirement," *Amato*, 618 F.2d at 568; *see Kross*, 701 F.2d at 1245 (quoting *Amato*), is not present in this case. Accordingly, we find *Kross* to be based on a flawed premise, and we refuse to follow it.

*Amaro*, 724 F.2d at 751–752. (footnote omitted). The Ninth Circuit went on to analyze the analogous situations considered by the Supreme Court in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 729, 101 S.Ct. 1437, 1438, 67 L.Ed.2d 641 (1981) where utilization of arbitration processes were not binding, nor were they prerequisites to suit. 724 F.2d at 752.

■ Even accepting the *Kross* court's decision that exhaustion was the better approach, this Court would exercise its discretion to determine that an exhaustion requirement is not appropriate in Garry's case. *Kross* explicitly recognized that

> ... application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court.

701 F.2d at 1244. Refusing to hear Garry's ERISA claim under the exhaustion doctrine would only fracture his suit and would still require consideration of his claim that he was wrongfully discharged—an allegation that provides a cause of action under both the ADEA and ERISA. This Court's analysis of ERISA and the exhaustion doctrine is consistent with that of the *Amaro* court. *See also Citro v. TRW*, C82–2911 (N.D.Ohio October 12, 1984) (exhaustion of administrative remedies under TRW's pension plan not a prerequisite to a suit under § 510). TRW's motion for summary judgment on Garry's claim under § 510 of ERISA must be denied.

For the reasons set forth above, TRW's motion for partial summary judgment on damage issues and to strike certain portions of plaintiff's complaint, and TRW's motion for summary judgment on the ERISA claim are denied.

IT IS SO ORDERED.