FRANCO A. MARCOZ, Appellant, *v.* SUMMA CORPORATION, Respondent.

No. 19874

November 28, 1990                    801 P.2d 1346

738

*Brian K. Berman,* Las Vegas, for Appellant.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Carol R. Davis,* Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

This is an action by appellant Franco A. Marcoz (Marcoz) against his former employer Summa Corporation (Summa) for wrongful termination of employment. In a question of first impression, this court must determine whether a discharged employee's allegation of bad faith termination for the purpose of saving or reducing the employer's obligation for future contributions to the employee's retirement plan is preempted by the provisions of section 510 of the federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq. (1982)). Marcoz is attempting to bring his claim under our narrow holding of K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987), in which we upheld a general jury award based on a similar claim and some uniquely egregious conduct.

## *Facts and Disposition Below*

In reviewing a motion to dismiss, we are bound to accept all the factual allegations in the complaint as true. Edgar v. Wagner, 101 Nev. 226, 227-228, 699 P.2d 110, 111-112 (1985). Having made this assumption, our function, then, is to determine whether Marcoz has specified allegations sufficient to constitute the elements upon which relief can be granted. *Id.*

Marcoz had been a Summa employee since December 1973. From the date of his hiring in 1973 until 1981, Marcoz worked as a training representative in food services at Summa's gaming properties. This position was phased out and Marcoz was transferred to Summa's Central Personnel Office (CPO) where he was an employment representative responsible for interviewing candidates for subsequent assignment to union jobs at various Summa properties.

In January 1985, Summa dissolved the CPO, electing to handle personnel matters on a property-by-property basis. Apparently, management made general representations to all CPO employees, assuring each that they would be placed in other positions within Summa. Marcoz alleges that he was specifically promised an alternative position with Summa and that all CPO employees were placed as promised except Marcoz.

Marcoz further alleges that no serious effort was made to place him in another position with Summa although he wanted to remain in Summa's employ. He claims he not only relied on the representations but that he even offered to work in a lesser position and at a reduced salary.

After Summa officials unsuccessfully attempted to persuade

Marcoz to voluntarily accept early retirement, he was terminated. At the time of his termination, Marcoz was vested in Summa's retirement plan, but receives less money from the plan than he would receive had he been allowed to remain working until age 65 or older. Marcoz was 57 years old at the time of his termination.

The complaint alleged wrongful, discriminatory employment discharge and the following five causes of action: (1) age discrimination in violation of the Federal Age Discrimination Act; (2) breach of employment contract; (3) tortious discharge in violation of public policy; (4) bad faith discharge in violation of implied covenant of good faith and fair dealing; and (5) intentional infliction of emotional distress. The district court reviewed these causes of action and determined that the second, third and fourth causes of action were at least partially dependent on the claim of discharge with intent to save money through deprivation of enhanced retirement and other benefits and was therefore preempted by the federal ERISA legislation.

The particular allegation which the district court ordered dismissed alleges Summa was "[a]ttempting to force an early retirement upon Plaintiff in order to reduce his benefits, thereby saving Defendant Summa money." This claim or its equivalent was realleged in the dismissed portions of the other causes of action.

The district court held that because of ERISA preemption, a claim as stated by Marcoz above could not be the basis of a state breach of contract action. It did not completely dismiss the second cause of action because it noted that Marcoz might be able to raise other valid claims which would demonstrate Summa's breach of contract. The court further dismissed part (b) of the third cause of action insofar as it was predicated on the ERISA preempted allegation but let the age discrimination claim in part (a) stand, as it was not preempted by ERISA.

The fourth cause of action for bad faith discharge was completely dismissed. This dismissal was apparently based on the district court's conclusion that because ERISA preempted causes of action based on claims that the discharge was designed to interfere with a plan participant's benefits, it would not be possible for Marcoz to allege a cause of action that satisfied the narrow, fact-specific requirements of *K Mart*. In short, the district court held that ERISA eliminated an actionable *K Mart* claim of bad faith discharge in violation of the implied covenant of good faith and fair dealing. Although there are some factual similarities between *K Mart* and this case, the issue of ERISA preemption was not raised by the parties in *K Mart* and was therefore not addressed in our opinion.

For the reasons set out below, we find no error in the district court's preemption determination. We affirm the dismissals as proper recognition that the affected claims are federal claims concerning which the federal forum has exclusive jurisdiction.

*Preemption Discussion*

ERISA applies, *inter alia,* to all employee benefit plans established or maintained by any employer engaged in interstate commerce or in any industry affecting commerce. 29 U.S.C. § 1003(a)(1) (1982). Summa meets the statutory interstate requirement and the plan in question is clearly an ERISA plan.[1] The question of whether particular state action is preempted by federal law involves interpreting the language of the statute in accordance with congressional intent. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985).

It is well established that the breadth of ERISA preemption is unique among federal statutes. *See, e.g.,* Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9 (1987); Franchise Tax Bd. v. Construction Laborer Vacation Trust, 463 U.S. 1, 24 n.26 (1983). The original ERISA bill draft contained limited preemption language. This limited language was consciously rejected by the conference committee and ultimately altered to reflect the more expansive approach now contained in the law. Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-100 (1983). The accompanying legislative history clearly shows the extensive preemptive effect Congress intended ERISA to have. *Id.*

The Supreme Court has consistently maintained an expansive construction of ERISA preemption even to the extent of making ERISA claims an exception to the well-pleaded complaint rule. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987); Hartle v. Packard Elec., 877 F.2d 354, 355 (5th Cir. 1989). An additional illustration of ERISA's preemptive scope can be found in Alessi v. Raybestos-Manhattan Inc., 451 U.S. 504 (1981), where the court held that a New Jersey law which prohibited the set-off of workmen's compensation benefits against employee retirement benefits was preempted even though the law was directed at worker's compensation benefits. The court noted that the Act (ERISA) was designed to occupy fully the field of employee benefit plans and to establish it "as exclusively a federal concern." *Id.* at 523.

---

[1]The ERISA status of the plan cannot reasonably be disputed. Its status was clearly demonstrated below using the plan documents. There was no claim that the Summa plans were not ERISA plans and this conclusion is not challenged or disputed on appeal.

Similarly, in *Shaw* the court unanimously struck down a New York law requiring compensation for pregnancy-related disability that would have gone uncompensated under the existing plans were it not for the New York requirement. The court said that Congress meant the "relate to" language in the statute to have the "normal sense" meaning that the state law claim is preempted "if it has a connection with or reference to such a plan." *Id.* at 97.[2] This encompasses direct regulation as well as regulation by implication. *Id.* at 96-99. The *Shaw* court did note that some state actions might be too tenuous or peripheral to satisfy the "relate to" language of the statute. *Id.* at 100 n.21.[3]

The most recent Supreme Court ERISA cases retrenched the preemption aspect somewhat but not in a manner that affects the outcome of this case. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1 (1987); Mackey v. Lanier Collections Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182 (1988). In *Fort Halifax,* the court decided that ERISA preemption of a Maine plant closing statute requiring lump sum severance payments would not serve the purposes of ERISA and, therefore, in recognition of the state's interest declined to allow preemption. Similarly, in *Mackey,* a Georgia state law which allowed garnishment of ERISA employee welfare benefits was not preempted despite the fact that the law clearly impacted an ERISA plan.

Here, the district court primarily based its decision on its interpretation of 29 U.S.C. §§ 1144(a), 1140, and 1132 (1982).[4] ERISA provides, with exceptions that do not apply to these facts,[5]

---

[2]To highlight the expansiveness of "relate to," the court cites Black's Law Dictionary 1158 (5th ed. 1979) which provides: "Relate. To stand in some relation; to have bearing or concern; to pertain; refer, to bring into association with or connection with." Obviously, the definition does not decide the question, but it illustrates the breadth of the term used by Congress. We must assume that the term was deliberately chosen.

[3]The court furthered the expansive interpretation of ERISA preemption provisions in the companion cases of Pilot Life Ins. Co. v. Dedeaux, 480 U.S. 41 (1987); and Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).

*Pilot Life* is not directly relevant as it related to improper processing of insurance claims. The court unanimously held that the language of § 1132 preempted such claims in that the claim did "relate to" an ERISA plan making the claims federal claims with exclusive federal remedies.

*Taylor,* likewise involved the question of improper administration of an ERISA plan in an action against the plan fiduciary. The court held this to be an obvious area of federal concern and preemption applied.

[4]For ease of reference, all statutory citations in the opinion shall be to the various citations in the United States Code and not to the particular sections of ERISA.

[5]In broad characterization, the exceptions concern causes of action which accrued prior to January 1, 1975; state insurance, banking, and securities laws; state criminal law; and state domestic relations laws. 28 U.S.C. §§ 1003(b); 1144(b) (1982).

that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [within the Act's coverage]." 29 U.S.C. § 1144(a) (1982). State law is defined broadly enough to encompass almost any imaginable legislative, judicial or administrative action a state might take. 29 U.S.C. § 1144(c)(1)(2) (1982).

Given the plain meaning of the statutory language and the broad construction accorded ERISA preemption, Marcoz's claims appear to "relate to" an employee benefit plan. If § 1144(a) were the only applicable section, we would have to determine whether the relationship was too tenuous given the state interest. However, any uncertainty on the point is resolved when that section is read in conjunction with § 1140.

Section 1140 provides:

### Interference with protected rights

It shall be unlawful for any person to *discharge,* fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the *purpose of interfering with the attainment of any right to which such participant may become entitled under the plan,* this subchapter, or the Welfare and Pension Plans Disclosure Act . . . . The provisions of section 1132 of this title shall be applicable in the enforcement of this section [emphasis added].

The § 1132 enforcement provision referred to in § 1140 provides:

A civil action may be brought—

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3) (1982).

Congress enacted these sections "in order to completely secure the rights and expectations brought into being by this landmark reform legislation." S. Rep. No. 127, 93d Cong., 2d Sess. 36, *reprinted in* 1974 U.S. Code Cong. & Admin. News 4838, 4872 (1974). The intent was to prohibit employers from discharging or

harassing their employees in order to prevent them from obtaining their statutory or plan-based rights and was designed to protect the employment relationship. West v. Butler, 621 F.2d 240, 244-46 (6th Cir. 1980).

Section 1140 prohibits any person[6] from discharging an employee "for the purpose of interfering with the attainment of any right." Although § 1144 leaves open the question of relatedness, it is in § 1140 where the dismissed Marcoz claims run aground on the explicit preemptive language. It clearly applies to the type of termination allegedly suffered by Marcoz and provides a federal remedy therefor. A fair reading of the broad language supports the lower court's determination that the dismissed claims were preempted by the above statute.

In reaching its decision, the district court relied on Sorosky v. Burroughs, 826 F.2d 794 (9th Cir. 1987); Lembo v. Texaco, 239 Cal.Rptr. 596 (Cal.App. 1987); and Johnson v. TWA, 196 Cal.Rptr. 896 (Cal.App. 1983). In *Sorosky,* the 55-year-old plaintiff lost his job in a Burroughs' work consolidation and relocation action. He sued in state court, claiming breach of contract/wrongful discharge, breach of duty of good faith and fair dealing, and conspiracy to interfere with a protected property interest. Burroughs removed the case to federal court (the opinion does not disclose on what grounds) and the federal district court granted summary judgment. Sorosky then challenged the district court's jurisdiction, claiming that the removal was erroneous. *Id.* at 798.

Burroughs claimed federal jurisdiction existed based on both § 1140 and § 1144. The *Sorosky* court said, "the preemption issue seems clear to us" and held that the claims were preempted by the explicit language of § 1140 and under the "relate to" language of § 1144. *Id.* at 799. The court concluded:

> Sorosky therefore had a federal claim under section [§1132(a)(3)] to enforce his right under [§1140] to non-interference with his employee benefits. We need not address whether Sorosky could seek damages . . . . The allegations in Sorosky's complaint that relate to the employee benefit plan state a claim under, and are therefore within the scope of [§1132(a)(3)] even if that section does not provide the entire remedy that Sorosky seeks in his complaint. These claims are thus so completely preempted as to state a claim arising under federal law [citing *Metropolitan Life*].

*Id.* at 800.

---

[6]The statutory definition of "person" encompasses almost any conceivable entity, organization or corporation. 29 U.S.C. § 1002(9) (1982).

In Lembo v. Texaco, 239 Cal.Rptr. 596 (Cal.App. 1983), Texaco made misrepresentations inducing the plaintiffs to retire shortly before a lucrative voluntary retirement program would be available. By retiring when they did, the former employees forfeited the right to take advantage of the program's generous provisions. The employees alleged that as a result of Texaco's conduct, they had lost valuable pension and life insurance benefits. The action was removed to federal court. Plaintiffs sought to have it remanded back to the state court, claiming there was no federal jurisdiction. The federal district court agreed and remanded the action back to the state court.

The *Lembo* court stated that once Congress has expressed the intention to occupy the field, state law is preempted even if it does not directly interfere with substantive federal legislation. *Id.* at 599 (citing Alessi v. Raybestos-Manhattan Inc., 451 U.S. 504 (1981), and Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir. 1981)). It concluded that the claim made was an exclusively federal claim for which there was no concurrent state jurisdiction and reversed and remanded for further action consistent with its holding.[7]

Johnson v. TWA, 196 Cal.Rptr. 896 (Cal.App. 1983), is in accord with *Sorosky* and *Lembo*. The *Johnson* court concluded that the statutory language and legislative history of ERISA resolves the issue of preemption by observing,

> Here, section 1140 expressly proscribes the wrongful conduct alleged in appellant's first cause of action; i.e., discharge for the sole purpose of depriving appellant of employee benefits. The remedial provisions of ERISA, sections 1132 and 1140, coupled with section 1144 establish that, to the extent that the employee benefits enumerated in the first cause of action are within the regulation of the act, appellant's state law claims are preempted.

*Id.* at 902.

In the recent case, Barnick v. Longs Drug Stores, Inc., 250 Cal.Rptr. 10 (Cal.App. 1988), the California appellate court, following the lead of *Sorosky,* held that an employee's claim that he was fired to deprive him of pension benefits and who sued for (1) wrongful termination, (2) breach of employment contract, (3) breach of (benefits plan) contract, (4) conversion, and (5) breach

---

[7]The Supreme Court of California granted review of this case and then ordered the lower court to republish its original opinion with citations to the recent Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41 (1987), case. This leads to a fairly strong inference that the law in California is that such claims are exclusively federal claims.

of covenant of good faith and fair dealing was partially preempted. The court dismissed outright the third, fourth and fifth causes of action and the first and second to the extent they referred to the plan. The court allowed the remaining independent, non-ERISA claims to stand. *Id.* at 14.

Beyond the cases cited and discussed above, substantial additional authority can be cited for the proposition that allegations of employment discharge to prevent someone from obtaining benefits under an ERISA plan and similar conduct prohibited by § 1140 is a federal claim.[8] The conclusion that such federal claims preempt any state law claims naturally follows.

One recent Texas Supreme Court decision on the subject appears contra but we decline to follow it. In McClendon v. Ingersoll-Rand Co., 779 S.W.2d 69 (Tex. 1989), a divided court created an exception to its employment at will doctrine for terminations that are motivated by the employer's desire to avoid making payments to the employee's retirement/pension fund. The court held that the state had an interest in the integrity of pension plans and recognized the allegation as a state cause of action.

The Texas approach implicitly denies preemption. However, the preemption issue was lightly passed over by the majority which sought to use the language of § 1140 to validate its conclusion of the importance of the Texas interest in the issue with little apparent thought for the effect this language would have on the newly created state right. *Id.* at 71. The majority focus seemed to be on the undesirability of the employer's conduct rather than the question of the exclusivity of federal remedies. In a well-reasoned, three-judge dissent (Cook, J., author), the minority objected to the court's holding and argued that the cause of action was clearly preempted by ERISA. *Id.* at 71-73. We agree with the *McClendon* dissent on this issue. The broad, explicit preemption language of ERISA and the clear language of § 1140 present a federal barrier which is difficult to circumvent.

Marcoz's attempts to explain away § 1140 are unpersuasive. He asserts that termination of an employee to prevent further pension accruals did not state a claim under § 1140 because the

---

[8]*See* Fitzgerald v. Codex Corp., 882 F.2d 586 (1st Cir. 1989); Gilbert v. Burlington Industries, Inc., 765 F.2d 320, 328 (2d Cir. 1985); Kross v. Western Elec. Co., Inc., 701 F.2d 1238 (7th Cir. 1983); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir. 1981); Rose v. Intelogic Trace, Inc., 652 F.Supp. 1328 (W.D.Tex. 1987); Bumpers v. International Mill Services, 595 F.Supp. 166 (E.D.Penn. 1984); King v. James River-Pepperell, Inc., 593 F.Supp 1344 (D.Mass. 1984); Gordon v. Matthew Bender & Co., 562 F.Supp. 1286 (N.D.Ill. 1983); Witkowski v. St. Anne's Hosp. of Chicago, Inc., 447 N.E.2d 1016 (Ill.App. 1983).

section only applies to interference with vesting. Weir v. Litton Bionetics, Inc., 41 F.E.P. Cases 1150 (D.C.Md. 1986). This argument focuses on an ostensible literal reading of the § 1140 language. It emphasizes the segment of the statutory language that forbids interference with any right to which the individual "may" become entitled. This claim is refuted by the plain language of § 1140. Moreover, the context of *Weir* is inapposite to Marcoz's situation.

Marcoz insists that because he was vested, § 1140 does not apply to his claim. This argument has been rejected by other courts for the reason that it leads to an absurdity. Such an interpretation results in an ERISA application to individuals who are not vested in ERISA plans and an exemption from ERISA to individuals who have vested interests in such plans. *See* Clark v. Resitoflex Co., 854 F.2d 762 (5th Cir. 1988); Garry v. TRW, Inc., 603 F.Supp. 157 (N.D. Ohio 1985).

This argument also ignores the facts. Marcoz is not seeking damages for lost vested benefits which by definition the employer cannot legally avoid providing. Marcoz wants to claim the benefits that he would or might have attained had he not been discharged. ERISA either preempts these claims or it does not. Vesting is irrelevant to the effect of an ERISA plan and we are persuaded that it is a mistake to make a distinction on these grounds.

Marcoz contends that the ERISA relationship is too tenuous, and that § 1140, when read in conjunction with § 1144, requires a different result. This proposition relies heavily on Teper v. Park West Galleries, Inc., 427 N.W.2d 535 (Mich. 1988), a well-reasoned but inapposite case. The *Teper* court did an exhaustive analysis of whether an award of damages based on lost future pension benefits was preempted because it related to an ERISA plan. The court noted that the plan was uninvolved. The plan or its administrators had not been joined; it was not a party and would not have to do anything as a result of the award nor would it incur any administrative burdens. The court concluded that the relationship (citing *Shaw*) was too tenuous to trigger preemption. *Id.* at 541.

The issue before the *Teper* court is not the issue we must decide. There is a distinction between calculating damages with reference to the benefits that would have been available and the claim that the purpose of the discharge was to deprive the plaintiff of ERISA plan benefits. Marcoz's complaint falls into the latter category. *Teper* is distinguishable for this reason and cannot save Marcoz's allegations implicating acts and motives prohibited by § 1140.

Other courts have wrestled with the distinction between ERISA claims and monetary awards in this same context. The conclusion they generally come to is that if you allege that deprivation of benefits was the reason you were discharged, then the claim is preempted. But, if the loss is a "mere consequence" of the discharge, then it is not preempted. Ethridge v. Harbor House Restaurant, 861 F.2d 1389 (9th Cir. 1988). This conclusion is a rather fine distinction but recognizes that if you can prove a non-preempted state law claim which entitles you to recovery, then you may recover the lost benefits as part of your damages. But, if you must rely on the bad faith contract breach or tortious conduct as it relates to depriving you of ERISA plan benefits to make a claim, then your remedy is an exclusively federal remedy provided by ERISA and must be sought in federal court.

*Ethridge,* which was decided subsequent to *Sorosky,* is illustrative of this approach. The plaintiff in *Ethridge* stated that he had been tortiously discharged and that part of his damages was loss of benefits. Harbor House attempted to remove the case to federal court on the basis of this reference to lost benefits. Both the federal district court and the circuit court of appeals rejected this claim. They noted that nowhere was there an allegation that the reasons given for the discharge were pretextual or that the true purpose of the firing was to deprive the plaintiff of benefits. *Id.* at 1405 (citing Rose v. Intelogic Trace, Inc., 652 F.Supp. 1328, 1330 (W.D.Tex. 1987)).

The *Ethridge* court approved of this distinction by saying,

> We agree with those courts which have held that "[n]o ERISA cause of action lies . . . when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of benefits." (Citing *Rose* and Titsch v. Reliance Group, Inc., 548 F.Supp. 983, 985 (S.D.N.Y. 1982), aff'd mem. 742 F.2d 1441 (2d Cir. 1983)).

*Id.*

Although this distinction is not entirely satisfactory, we concede that it appears to accurately state the law as it is currently set out in the ERISA legislation and accompanying interpretative case law.[9]

---

[9]Successful state allegations will have to be based on something other than loss of ERISA benefits. Once a proper non-preempted allegation has been made and proven, then damages could be calculated on the lost benefits. Ordinarily, this distinction would raise the prospect of artful, tactical pleading which could render any decision adopting this approach meaningless. However, we think the *McClendon* dissent has merit when it asserts that true

## Preemption of Non-ERISA Benefits

Marcoz attempts to avoid complete preemption of some of his claims by alleging compensable losses of non-ERISA benefits. Under the narrow confines of *K Mart*, Marcoz has not stated a viable cause of action for other employment benefits after the ERISA preemption of the retirement benefits issues. Our ruling in *K Mart* has no application to claims involving ERISA benefits. The reasoning of the court below is sound and we perceive no error in its decision on this aspect of the case.

## CONCLUSION

We are persuaded that the legislative history of ERISA, the expansive nature of § 1144(a), the explicit language of § 1140, and the weight of authority all support the conclusion that claims of purposeful denial of ERISA benefits are preempted. Arguments that the connection between this cause of action and the ERISA plan is too tenuous and remote do not adequately address the plain language of the statute and the clear congressional intent to prevent purposeful discharge with the intent to deprive plan participants of ERISA benefits. The remedy for such conduct by an employer is exclusively federal. Consequently, the district court did not err in determining that Marcoz's claims which assert prohibited conduct and motives in relation to a ERISA plan are preempted.

The judgment below is affirmed.

---

ERISA claims which attempt to avoid ERISA may be removed and upon removal be subject to a preemption defense in federal court. Clearly, to avoid ERISA all claims of liability will have to be independently sufficient without allegations of federally prohibited conduct and motives relating to ERISA plans.